UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**MIMEDX GROUP, INC.,**

    **Plaintiff,**

    v.

**DBW PARTNERS LLC, D/B/A THE CAPITOL FORUM, et al.,**

    **Defendants.**

Civil Action No. 17-1925 (JDB)

---

**MEMORANDUM OPINION**

Before the Court is [18] defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff MiMedx Group, Inc. ("MiMedx") brought claims for libel, slander, defamation, false light invasion of privacy, tortious interference with business relations, and false advertising under the Lanham Act after defendants published articles that questioned MiMedx's sales practices. Defendants move the Court to dismiss each claim for failure to state a claim upon which relief can be granted. For the reasons that follow, defendants' motion will be granted in part and denied in part.

**BACKGROUND**[1]

MiMedx is a publicly traded medical-products corporation organized under Florida law and headquartered in Georgia. Compl. for Damages & Injunctive Relief ("Compl.") [ECF No. 1] ¶ 6. Id. Defendant DBW Partners LLC d/b/a The Capitol Forum ("The Capitol Forum") is a firm

---

[1] The following facts are derived from the allegations in defendants' complaint and are assumed to be true for the purposes of deciding this motion to dismiss.

1

based in the District of Columbia that offers business and regulatory analysis to paid subscribers. Id. ¶ 7. This lawsuit arises from articles that The Capitol Forum published about MiMedx and communications related to those articles.

On August 21, 2017, The Capitol Forum "published an article entitled 'MiMedx: Channel Stuffing Accusations Resurface in Recent Counterclaim; Former Employees Corroborate Allegations; A Close Look at Potential Risk'" [hereinafter "the August 21 article"]. Id. ¶ 23. The August 21 article outlined allegations MiMedx's former employees made in court filings against MiMedx claiming that the company had engaged in "channel stuffing"—a practice by which a company artificially inflates its sales and revenue figures by distributing more products to retailers than the retailers can sell. Id. ¶¶ 19–25.

The same day, The Capitol Forum distributed this article to at least some MiMedx shareholders via email [hereinafter "the August 21 email"]. Id. ¶ 24. The email included a description of the August 21 article, which stated: "In the article, we detail channel stuffing allegations and recent counterclaims which may pose as a regulatory risk for the company. The article examines the allegations made by customers & former employees, the company's response to these claims, and the potential legal risks for MiMedx." Id. ¶ 25 (emphasis added). The August 21 email concluded with an invitation to "schedule a call" with The Capitol Forum for more information. Id. The Capitol Forum now acknowledges that the "reference to 'customers' in the August 21 email was a mistake: as the underlying report . . . indicated, the allegations of channel stuffing were contained in claims and counterclaims filed by former MiMedx employees," not by customers. Mem. P. & A. Supp. Defs.' Mot. to Dismiss ("Defs.' Mot.") [ECF No. 18-1] at 3.

As part of its "ongoing examination of allegations of channel stuffing made by former MiMedx employees," The Capitol Forum also submitted a Freedom of Information Act ("FOIA")

2

request to the Department of Veterans Affairs, Office of the Inspector General ("OIG"). Compl. ¶ 28. The Capitol Forum determined from the OIG's denial of its FOIA request that an OIG investigation "involve[d] documents related to MiMedx." Id. Meanwhile, MiMedx informed The Capitol Forum "off-the-record that MiMedx had initiated contact with the OIG, that MiMedx was voluntarily working with the OIG, and that MiMedx was specifically not a target of the investigation." Id. ¶ 30. On September 7, 2017, The Capitol Forum published another article titled "VA Office of Inspector General Confirms Investigation Involving MiMedx Documents" [hereinafter "the September 7 article"]. Id. ¶ 27. The article "omitted positive information" that MiMedx had provided The Capitol Forum and instead relayed only "that the OIG's inquiry involved 'documents related to MiMedx.'" Id. ¶¶ 29–30. As it had done with the August 21 article, the Capitol Forum promoted the September 7 article in an email, invited readers to schedule a call for more information, and directed the email to at least some MiMedx shareholders. Id. ¶¶ 27–28.

MiMedx alleges that The Capitol Forum's publications served as part of a "conspir[acy] to adversely manipulate the stock price of MiMedx via false and/or misleading statements to MiMedx's shareholders, which were intended to cause those shareholders to sell their stock." Id. ¶ 33. The Capitol Forum allegedly served "as a 'shill' for bearish traders in MiMedx stock" based upon "a nefarious motive to benefit the interests of bearish traders in MiMedx stock at the expense of the company, because those bearish traders included . . . friends, family, affiliates, and/or even . . . themselves." Id. ¶¶ 33–34. MiMedx states that its "stock price dropped" on both September 7 and September 8, 2017, and that its stock price declined by more than 20% overall between August 21 and September 21, 2017. Id. ¶ 32.

On September 21, 2017, MiMedx filed this action against The Capitol Forum and individuals who are principals or employees of The Capitol Forum: Trevor Baine, Teddy Downey, Jake Williams, Miles Pulsford, Matt Treacy, and fictitiously named defendants Does 1-100. Id. ¶¶ 7–10. MiMedx alleges that The Capitol Forum's description in its August 21 email of allegations by "customers" constitutes libel (Count 1) and defamation (Count 3). Id. ¶¶ 36–41, 47–51. MiMedx further alleges that The Capitol Forum's invitation to shareholders to "schedule a call" for more information about these customer allegations is evidence that The Capitol Forum "repeated the false and malicious statement(s)," constituting slander (Count 2). Id. ¶¶ 42–46. MiMedx also asserts that the false and misleading content in The Capitol Forum's articles and emails violated MiMedx's right to privacy by placing it in a false light in the public eye (Count 4), id. ¶¶ 52–56; tortiously interfered with its business relations (Count 5), id. ¶¶ 57–61; and violated the Lanham Act's false advertising provision (Count 6), id. ¶¶ 62–68.

Defendants now move to dismiss each claim for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

Rule 12(b)(6) provides for dismissal of a claim where the proponent has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

4

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). In short, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.

## DISCUSSION

### I. CHOICE OF LAW

In a diversity case, this Court generally employs the choice-of-law analysis of the District of Columbia. See Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 857 (D.C. Cir. 2006); Mar-Jac Poultry, Inc. v. Katz, 773 F. Supp. 2d 103, 111 (D.D.C. 2011). "Under District of Columbia law, the court must first determine if there is a conflict between the laws of the relevant jurisdictions" and "[o]nly if such a conflict exists must the court then determine, pursuant to District of Columbia choice of law rules, which jurisdiction has the 'more substantial interest' in the resolution of the issues." Young Women's Christian Ass'n of the Nat'l Capital Area, Inc. v. Allstate Ins. Co. of Canada, 275 F.3d 1145, 1150 (D.C. Cir. 2002). Factors relevant to this substantial-interest determination include: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship is centered." District of Columbia v. Coleman, 667 A.2d 811, 816 (D.C. 1995).

MiMedx asserts that Georgia law applies to all claims except for its federal Lanham Act claim because "MiMedx is headquartered in Georgia and stands to suffer injury there." Compl. ¶ 35; Pl.'s Mem. P. & A. Opp'n Defs.' Mot. to Dismiss ("Pl.'s Opp'n") [ECF No. 20] at 9 n.3. Defendants note that District of Columbia law could also apply because it is where "[T]he Capitol Forum is incorporated and domiciled, where it publishes its newsletter, where most of the individual defendants live and work, and where the bulk of the reporting concerning MiMedx was

5

performed." Defs.' Mot. at 6 n.3. However, defendants maintain that "there is no need to resolve any choice of law issue" because the laws of Georgia and the District of Columbia are virtually identical. See id.² Because the Court concludes that the laws of Georgia and the District of Columbia as applied to MiMedx's claims do not conflict, the Court will apply the prevailing law of both jurisdictions.

## II. MIMEDX'S DEFAMATION CLAIMS (COUNTS 1–3)

MiMedx makes three related claims for libel, slander, and defamation.³ Compl. ¶¶ 36–51. First, MiMedx alleges The Capitol Forum committed libel (Count 1) and defamation (Count 3) by its use of the word "customers" in the August 21 email. Id. ¶ 37, 48. MiMedx bases its slander claim (Count 2) on the allegation that "Defendants repeated the false and malicious statement(s)" in the August 21 email, i.e., that customers had alleged channel stuffing, "to MiMedx's investors and/or others by telephone or in-person." Id. ¶ 43.⁴

A claim for defamation under Georgia law requires "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." Infinite Energy, Inc. v. Pardue, 713 S.E.2d 456, 460 (Ga.

---

² Although MiMedx is organized under Florida law, Compl. ¶ 6, and at least one individual defendant is domiciled in New York, Compl. ¶¶ 11–12, both parties propose—and the Court agrees—that only Georgia or District of Columbia law would reasonably apply to the claims at issue here.
³ Written or printed defamation constitutes libel; oral defamation constitutes slander. Restatement (Second) of Torts § 568 (1977); see Ning Ye v. Holder, 644 F. Supp. 2d 112, 117 (D.D.C. 2009) (applying DC law); Ga. Code Ann. §§ 51-5-1, 51-5-4.
⁴ In its opposition to defendants' motion to dismiss, MiMedx attempts to expand its defamation claim to apply to the September 7 article. Pl.'s Opp'n at 18–20. However, its complaint alleges defamation, libel, and slander only as to the August 21 email. See Compl. ¶¶ 37, 43, 48. Because a Court ruling on a Rule 12(b)(6) motion to dismiss may only consider allegations included in the operative complaint, documents incorporated by reference in the complaint, and matters of which a court may take judicial notice, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), the Court will not consider MiMedx's assertion in its brief that the September 7 article was defamatory.

6

Ct. App. 2011) (citing Mathis v. Cannon, 573 S.E.2d 376, 380 (Ga. 2002)); see also Ga. Code Ann. §§ 51-5-1, 51-5-4. The elements are substantively identical under District of Columbia law. See Oparaugo v. Watts, 884 A.2d 63, 76 (D.C. 2005) (citing Crowley v. N. Am. Telecomms. Ass'n, 691 A.2d 1169, 1173 n.2 (D.C. 1997)).

The fourth element—"special harm or the actionability of the statement irrespective of special harm"— requires that a plaintiff either prove special damages, which "are limited to actual pecuniary loss . . . specifically pleaded or proved," Fed. Aviation Admin. v. Cooper, 566 U.S. 284, 295 (2012) (citing Restatement (First) of Torts § 575 cmts. a & b (Am. Law Inst. 1938)), or show that the statements are "defamatory per se" because they are of a type "so likely to cause degrading injury to the subject's reputation that proof of that harm is not required to recover compensation," Franklin v. Pepco Holdings, Inc., 875 F. Supp. 2d 66, 75 (D.D.C. 2012). Defamatory statements related to a plaintiff's "fitness for the proper conduct of his lawful business, trade or profession" generally constitute defamation per se. Restatement (Second) of Torts § 573 (Am. Law Inst. 1977) (slander per se); see also Cottrell v. Smith, 788 S.E.2d 772, 780–81 (Ga. 2016) (stating that "charges against another in reference to his trade, office, or profession, calculated to injure him therein" constitutes defamation per se and renders the claim actionable without further proof of special damages) (quoting Ga. Code Ann. § 51-5-4); Franklin, 875 F. Supp. 2d at 75 (applying District of Columbia law and noting that defamation per se includes "false statements that impute to the subject . . . a matter adversely affecting the person's ability to work in a profession" (citing Restatement (Second) of Torts)).

No heightened pleading standard applies to defamation actions, and a court reviewing a motion to dismiss need only determine "whether the factual allegations are sufficient to permit [defendants] to respond to [plaintiff's] claim of defamation and whether, construing the complaint

7

in the light most favorable to [plaintiff], it appears beyond doubt that he can prove no set of facts that would entitle him to recover." Oparaugo, 884 A.2d at 77; see Eason v. Marine Terminals Corp., 710 S.E.2d 867, 872 (Ga. Ct. App. 2011) (reversing grant of motion to dismiss where defamation complaint "included all that was required, namely 'a short and plain statement of the claim that [gave] the defendant[s] fair notice of what the claim [was] and a general indication of the type of litigation involved . . .'" (citation omitted)).

Defendants first argue that MiMedx fails properly to allege the existence of a false and defamatory statement because "the single word MiMedx challenges is not defamatory in the context of the overall email" in that it neither rendered the email "substantially false" nor caused "any incremental harm above and beyond the harm that would have been caused by the remainder of the publication, which is not challenged." Defs.' Mot. at 8–13 (quotations at 8, 12). MiMedx responds that "the use of the word 'customers' . . . substantively changed the meaning of the entire communication" because "there is a significant difference between allegations by a company's customers and its disgruntled former employees" and further because it "made it appear that the article contained new or additional allegations that might corroborate the former employees' allegations." Pl.'s Opp'n at 16–18. MiMedx asserts also that this reference to channel-stuffing allegations by customers was defamatory because it "injured MiMedx's reputation," "tended to expose MiMedx to negative views by . . . shareholders," and "diminished" "the value of the company . . . in the eyes of the trading public." Compl. ¶¶ 26, 38–39.

Under District of Columbia law, "[w]hen confronted with a motion to dismiss, a court must evaluate" as a matter of law "[w]hether a statement is capable of defamatory meaning." Jankovic v. Int'l Crisis Grp., 494 F.3d 1080, 1091 (D.C. Cir. 2007) (citation omitted). "A statement is 'defamatory' if it tends to injure the plaintiff in his trade, profession or community standing, or

8

lower him in the estimation of the community." Moss v. Stockard, 580 A.2d 1011, 1023 (D.C. 1990); see also Restatement (Second) of Torts § 559 (defining a defamatory communication as one that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him").

In contrast, Georgia law provides that "the question of whether a published statement is defamatory is a question for the jury," and "[o]nly when 'the statement is not ambiguous and can reasonably have but one interpretation, the question is one of law for the judge.'" Mar-Jac Poultry, 773 F. Supp. 2d at 114 (citation omitted). A statement that "mak[es] charges against another in reference to his trade, office, or profession, calculated to injure him therein" constitutes defamation per se. Ga. Code Ann. § 51-5-4(a)(3) (slander per se); Lucas v. Cranshaw, 659 S.E.2d 612, 616 (Ga. Ct. App. 2008) (explaining that Georgia case law has incorporated the definition of slander into the definition of libel, rendering "that which is slander per se also . . . libel per se"). "An allegedly defamatory statement[] must be construed in the context of the entire publication, as a whole, to determine whether it was potentially defamatory." Mar-Jac Poultry, 773 F. Supp. 2d at 114–15. "[I]n considering whether a writing is defamatory as a matter of law, [a court] look[s] not at the evidence of what the extrinsic circumstances were at the time indicated in the writing, but at what construction would be placed upon it by the average reader." Macon Tel. Publ'g Co. v. Elliott, 302 S.E.2d 692, 694 (Ga. Ct. App. 1983).

Here, the Court concludes that the contested statement is at least "capable of defamatory meaning" under District of Columbia law, see Franklin, 875 F. Supp. 2d at 75 (emphasis added) (citation omitted), in that it was concededly false that customers had made allegations of channel stuffing against MiMedx and the statement alleged that MiMedx engaged in a wrongful commercial practice, which would "tend[] to injure" MiMedx's "trade, profession or community

9

standing," see Moss, 580 A.2d at 1023. Applying Georgia law, the Court concludes that whether the statement is defamatory is ambiguous. The statement references MiMedx's "trade . . . or profession" and MiMedx alleges that The Capitol Forum acted purposely in a way "calculated to injure" MiMedx by conspiring to devalue its stock price, which would support a finding that the statement was defamatory per se. However, the statement is less clearly defamatory when "construed in the context of the entire publication"—that is, the August 21 email, which also attributed the accusations of channel stuffing to former employees. The Court concludes that, based on the allegations in the complaint, it is ambiguous under Georgia law "what construction . . . the average reader" would place upon the inclusion of the word "customers" in the August 21 email. See Macon Tel., 302 S.E.2d at 694. That means that the Court cannot conclude as a matter of law that, under Georgia law, the statement is not defamatory. Under the laws of either jurisdiction, then, MiMedx has sufficiently pleaded the existence of a defamatory statement to survive a motion to dismiss.

As to the remaining elements of a cause of action for defamation, MiMedx alleges—and The Capitol Forum concedes—that the August 21 email's reference to "'consumers'—as opposed to 'former employees'"—was false. See Compl. ¶ 26; Defs.' Mot. at 3. Moreover, as explained above, the statement is at least arguably defamatory. The parties do not dispute that the statement concerned MiMedx. Accordingly, MiMedx has pleaded the first element of a defamation claim. The Capitol Forum allegedly published this statement to third parties in written form via email and oral form either by "telephone or in-person" communications, thus satisfying the second element. See id. ¶¶ 23–25, 38, 43, 48. MiMedx further asserts that The Capitol Forum acted purposefully in publishing the contested statements in order to erode the value of the company's stock and thereby to profit, thus satisfying the requirement that the defendant have acted with at least

negligence. Id. ¶¶ 3–5, 23–25, 33–34. MiMedx's complaint also satisfies the fourth element, as it can be construed either to allege defamation per se in the form of statements designed to injure a plaintiff's business reputation, see id. ¶¶ 3–5, 38; or to allege special damages in the form of a diminution of company value,[5] see id. ¶¶ 5, 32–34. Thus, MiMedx's complaint alleges each element of a claim for defamation (and/or libel and slander), and defendants' motion to dismiss MiMedx's claims for defamation, libel, and slander will be denied.

Defendants seek to impose an additional pleading requirement, arguing that MiMedx was required to allege that defendants acted with actual malice and that its failure to do so justifies dismissal of MiMedx's claims. Defs.' Mot. at 13–27. MiMedx responds simply that its complaint "alleges numerous facts from which to conclude that Defendants acted against MiMedx with intentional or reckless disregard for the truth," including allegations of "the existence of several types of circumstantial evidence sufficient to demonstrate actual malice." Pl.'s Opp'n at 9, 21. More specifically, MiMedx proposes that The Capitol Forum purposely fabricated a fictitious channel-stuffing allegation by "customers" in order to manipulate MiMedx's stock price. Id. at 20. However, MiMedx does not address the threshold question of whether the actual malice standard applies to the allegedly defamatory statement at issue in this case.

"The constitutional guarantees" of freedom of speech and of the press require that a public figure may not recover damages related to a defamatory statement made in relation to a matter of

---

[5] Defendants also argue that MiMedx has failed to plead compensable damages and that this further justifies dismissal. Defs.' Mot. at 27–28. The parties disagree as to whether a corporation claiming defamation may claim damages in the form of diminution of the company's stock price as opposed to solely lost profits. See Defs.' Mot. at 27–28; Pl.'s Opp'n at 26–28. However, special damages are not limited to lost profits as a matter of law. Webster v. Wilkins, 456 S.E.2d 699, 701 (Ga. Ct. App. 1995) ("The special damages necessary to support an action for defamation, where the words are not actionable in themselves[,] must be the loss of money, or of some other material temporal advantage capable of being assessed in monetary value. The loss of income, of profits, and even of gratuitous entertainment and hospitality will be special damage if the plaintiff can show that it was caused by the defendant's words." (citation omitted)). MiMedx alleges damages that may be quantified in monetary form, see Compl. ¶¶ 32, 39, and thus its complaint does not fail as a matter of law on this account.

public concern "unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." N.Y. Times v. Sullivan, 376 U.S. 254, 279–80 (1964). However, "[w]hether a person is a public figure is a question of law that requires the court to review the nature and extent of the individual's participation in the specific controversy that gave rise to the [alleged] defamation." Cottrell, 788 S.E.2d at 782 (citation omitted). Only then must a public-figure plaintiff further "persuade the fact-finder that the defendant acted with actual malice in publishing the defamatory statements by clear and convincing evidence." See Competitive Enter. Inst. v. Mann, 150 A.3d 1213, 1251–52 (D.C. 2016); see also Mathis, 573 S.E.2d at 383.

A plaintiff may be a public figure for all purposes or a limited-purpose public figure. Georgia courts apply a three-part test to determine if an individual is a limited-purpose public figure, under which the court "must isolate the public controversy, examine the plaintiff's involvement in the controversy, and determine whether the alleged defamation was germane to the plaintiff's participation in the controversy." Mathis, 573 S.E.2d at 381 (quoting Atl. J.-Const. v. Jewell 555 S.E.2d 175, 183 (Ga. Ct. App. 2001)); see also Jankovic, 822 F.3d at 586 (stating that "to be a limited-purpose public figure, [one] must have 'thrust' himself to the 'forefront' of the public controversy at issue" (citation omitted)).

Defendants argue that MiMedx is a public figure because it is a public corporation. Defs.' Mot. at 14–18. Past decisions have indeed found public corporations to be public figures in a variety of contexts. See OAO Alfa Bank v. Ctr. for Pub. Integrity, 387 F. Supp. 2d 20, 47–48 (D.D.C. 2005); Metastorm, Inc. v. Gartner Grp., Inc., 28 F. Supp. 2d 665, 670 (D.D.C. 1998). However, neither this Court nor the Supreme Court has ever announced a per se rule that <u>all</u> public corporations are public figures for all matters in all defamation actions against all defendants.

12

Defendants point to the principle in OAO Alfa Bank that "[c]orporate plaintiffs are treated as public figures as a matter of law in defamation actions brought against mass media defendants involving matters of legitimate public interest," 387 F. Supp. 2d at 47, as support for the proposition that MiMedx must be found to be a public figure here. See Defs.' Mot. at 14. However, MiMedx does not concede that The Capitol Forum is a "mass media defendant[]" for the purpose of the rule, see OAO Alfa Bank, 387 F. Supp. 2d at 47; Compl. ¶ 3 (calling The Capitol Forum a "supposed subscription-based media outlet" (emphasis added)), 7 ("The Capitol Forum purports to be a subscription-based media outlet" (emphasis added)), and the Court does not find The Capitol Forum's status as a member of the mass media so clear as to take judicial notice of such a fact. Upon review of MiMedx's complaint (and construing the facts alleged in MiMedx's favor, as the Court must do at the motion-to-dismiss phase), the Court finds that MiMedx has not alleged facts that establish that it is a public figure or limited-purpose public figure. MiMedx may be able to produce a factual basis for a finding that it should be considered a private figure with regard to the statements alleged in this case. Under these conditions, there is no basis for imposing on MiMedx an obligation to anticipate in its complaint the need to plead facts to defend against defendants' assertion that it is a public figure. Cf. Gomez v. Toledo, 446 U.S. 635, 640 (1980) (finding "no basis for imposing on the plaintiff an obligation to anticipate [a qualified-immunity] defense by stating in his complaint that the [police superintendent] defendant acted in bad faith"). MiMedx may later be deemed a public figure or limited-purpose public figure, but at this stage its failure to allege actual malice in its complaint does not support dismissal of its claims for defamation, libel, or slander. Accordingly, defendants' motion to dismiss these claims will be denied.

## III. MIMEDX'S FALSE LIGHT CLAIM (COUNT 4)

MiMedx's fourth claim for relief alleges that defendants' conduct "wrongfully placed MiMedx in a false light in the public eye." Compl. ¶ 53. Specifically, MiMedx alleges that defendants "made literally false statements as well as misleading statements (e.g., those which purposely omitted facts or context tending to be favorable to MiMedx, or made suggestions concerning MiMedx that ran counter to the actual facts known by [d]efendants) in their articles, e-mails, and other discussions with shareholders." Id.

Both Georgia and the District of Columbia have adopted the Second Restatement of Torts' articulation of a cause of action for false light invasion of privacy. Doe v. Bernabei & Wachtel, PLLC, 116 A.3d 1262, 1266 (D.C. 2015) (noting that the District of Columbia has adopted the Restatement articulation of invasion of privacy torts, including false light); Smith v. Stewart, 660 S.E.2d 822, 834 (Ga. Ct. App. 2008) (citing Restatement articulation of false light invasion of privacy); Thomason v. Times-Journal, 379 S.E.2d 551, 554 (Ga. Ct. App. 1989) (same). "In order to sustain a false light invasion of privacy claim, a plaintiff must show that the defendant knowingly or recklessly published falsehoods about him or her and, as a result, placed him or her in a false light which would be highly offensive to a reasonable person." Smith, 660 S.E.2d at 834 (citing Thomason, 379 S.E.2d at 554; Restatement (Second) of Torts § 652E); see also Doe 116 A.3d. at 1267 (applying same standard).

The Restatement unequivocally states that "[a] corporation, partnership or unincorporated association has no personal right of privacy" and "therefore no cause of action" for false light invasion of privacy. Restatement (Second) of Torts § 652I, cmt. C. MiMedx argues that no Georgia case has explicitly adopted the Restatement's prohibition of corporations pursuing false light claims, and therefore its claim is not barred under Georgia law. Pl.'s Opp'n at 29–30. But

MiMedx also fails to identify any instance in which a Georgia court—or any other court—has recognized such a claim as one upon which relief may be granted. See id.

This Court has previously reasoned that because the District of Columbia had adopted the Restatement's articulation of the false light tort, it also adopted the Restatement's prohibition against corporate entities bringing false light claims. S. Air Transp., Inc. v. Am. Broad. Cos., 670 F. Supp. 38, 42 (D.D.C. 1987). The same reasoning applies to Georgia law. Because Georgia, like the District of Columbia, has adopted the Restatement's articulation of a cause of action for false light invasion of privacy, this Court concludes that Georgia also recognizes the Restatement's prohibition on corporate plaintiffs bringing false light claims.

Accordingly, since MiMedx is a corporation, it may not make a claim for false light invasion of privacy under Georgia or District of Columbia law. Because no amendment to its complaint could remedy this deficiency, its claim for false light invasion of privacy will be dismissed.

### IV. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS (COUNT 5)

MiMedx's fifth claim for relief asserts that defendants' conduct tortiously interfered with its business relations. Compl. ¶¶ 57–67. MiMedx alleges that "Defendants' conduct . . . was tortious, malicious, and independently wrongful" and that "Defendants' publications caused third parties, including customers, investors, and creditors, to fail to enter into anticipated business relationships with MiMedx, which proximately damaged MiMedx." Id. ¶¶ 58–59.

Under Georgia law, a claim for tortious interference with business relations requires proof that defendant "(1) acted improperly and without privilege, (2) acted purposely and maliciously with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused plaintiff financial injury." Camp v. Eichelkraut, 539

S.E.2d 588, 593 (Ga. Ct. App. 2000). Under District of Columbia law, "[a] prima facie case of tortious interference with business relations requires: '(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages.'" Whitt v. Am. Prop. Constr., 157 A.3d 196, 202 (D.C. 2017) (citation omitted).

Although the elements of a tortious interference with business relations claim differ under District of Columbia and Georgia law, the Court identifies no conflict that would require application of choice-of-law analysis because MiMedx's allegations of tortious interference fail to allege a sufficient factual basis to satisfy the pleading standard of Twombly and Iqbal under either jurisdiction's standard. MiMedx uses the labels of "customers, investors, and creditors" to describe hypothetical categories of business relationships with which The Capitol Forum could have interfered but indicates no specific business relationship affected by the alleged interference. MiMedx alleges only that defendants sought to manipulate the market for MiMedx stock generally. MiMedx has thus failed "to raise a right to relief above the speculative level," Twombly 550 U.S. at 555, and its claim for tortious interference with business relations will be dismissed.[6]

V. **LANHAM ACT FALSE-ADVERTISING CLAIM (COUNT 6)**

In its sixth claim for relief, MiMedx alleges that defendants' conduct "constituted a violation of the federal Lanham Act by virtue of the false and misleading statements made to MiMedx's shareholders," which "resulted in a significant diminution in reputation and value for the company." Compl. ¶¶ 63, 66. More specifically, MiMedx alleges that "[d]efendants'

---

[6] The parties disagree about whether and how a tortious interference with business relations claim might apply to the relationship between a company and its shareholders. See Defs.' Mot. at 35; Pl.'s Opp'n at 32–33. Because MiMedx does not allege any specific business relationship—with shareholders or otherwise—the Court does not decide whether such a claim would be cognizable under Georgia or District of Columbia law.

statements to MiMedx's shareholders were a cause, if not the primary cause, of [MiMedx's] stock price depreciation." Id. ¶ 5.

Section 43(a) of the Lanham Act, as amended and codified at 15 U.S.C. § 1125, provides a cause of action for false advertising when a person uses a false or misleading statement or description of fact "in commercial advertising or promotion . . . [that] misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead . . . [1] an injury to a commercial interest in sales or business reputation [2] proximately caused by the defendant's misrepresentations." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 131–32, 140 (2014). Under the proximate causation prong, the plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." Id. at 134. "[L]ike any other element of a cause of action," proximate causation "must be adequately alleged at the pleading stage in order for the case to proceed." Id. at 134 n.6. "If a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed." Id.

MiMedx has failed to allege adequately a violation of the Lanham Act. MiMedx alleges that The Capitol Forum made false or misleading statements, but it does not connect these statements to a competitive injury related to MiMedx's commercial interests. For example, MiMedx does not allege that customers withheld trade because of the allegedly false and misleading communications or that MiMedx suffered any loss of revenue. In fact, MiMedx does not even allege that these allegedly false and misleading statements reached its customers. Thus,

MiMedx has failed to state a claim for false advertising under the Lanham Act. MiMedx's claim for violation of the Lanham Act accordingly will be dismissed.

## CONCLUSION

For the reasons explained above, defendants' motion to dismiss will be denied as to Mimedx's libel, slander, and defamation claims. Mimedx's remaining claims for false light invasion of privacy, tortious interference with business relations, and for violation of the Lanham Act will be dismissed for failure to state a claim upon which relief may be granted. A separate Order consistent with this Memorandum Opinion has been issued on this date.

/s/

JOHN D. BATES
United States District Judge

Dated: September 28, 2018