# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/29/18___

MIMEDX GROUP, INC. and SEAN
MCCORMACK,

                 Plaintiffs,

    - against -

SPARROW FUND MANAGEMENT LP,
A/K/A "AURELIUS VALUE"; JOHN
FICHTHORN; BR DIALECTIC CAPITAL
MANAGEMENT, LLC; AND DOES 1-10,
INCLUSIVE,

                 Defendants.

**ORDER**

17 Civ. 7568 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       This is a defamation, false light, and tortious interference with business relations action brought by a public company and its employee against individuals and entities who allegedly made defamatory statements about the company over the telephone and on the internet.

       Defendants moved to dismiss, and on January 12, 2018, Magistrate Judge Katharine H. Parker issued a Report and Recommendation ("Report" or "R & R") recommending that Defendants' motions to dismiss be granted, and that Plaintiffs' motion for expedited discovery to ascertain the identity of one of the Defendants (Dkt. No. 14) be granted in part and denied in part. (Dkt. No. 83)

       Plaintiffs filed timely objections to the R & R. (Dkt. No. 84) Having reviewed Plaintiffs' objections, this Court will adopt Judge Parker's R & R as set forth below, and will grant Defendants' motions to dismiss. (Dkt. Nos. 33, 38) The motion for expedited discovery (Dkt. No. 14) will be denied as moot, because Plaintiffs have learned the identity of the subject

of their discovery request – Viceroy Research (Pltf. Obj. (Dkt. No. 84) at 5 n.1) – and have since

voluntarily dismissed their claims against it.  (Dkt. No. 90)[1]

## BACKGROUND[2]

### I.  THE PARTIES

Plaintiff MiMedx Group, Inc. is a Florida corporation with its principal place of

business in Marietta, Georgia.  (Cmplt. (Dkt. No. 1) ¶ 13)  MiMedx is a publicly traded company

listed on the NASDAQ exchange that processes, markets, and distributes medical products.  (Id.

¶ 4)

Plaintiff Sean McCormack is a MiMedx employee who resides in Florida.  (Id.

¶ 14)

Defendant Sparrow Fund Management LP is a Delaware limited partnership with

its principal place of business in Manhattan.  Its partners are citizens of New York and

California.  (Id. ¶ 15)  Sparrow is a "hedge fund manager and/or investment advisory firm," and

Plaintiffs allege, on information and belief, that it operates a website under the pseudonym

"Aurelius Value" that publishes research concerning publicly-traded companies.  (Id.; see also

id. ¶ 36 ("Upon information and belief, Aurelius Value is actually one or more of Sparrow's

partners or employees, posting under a pseudonym for the benefit of themselves and/or

Sparrow . . . ."))  Plaintiffs allege that Sparrow only posts commentary about companies in which

it has taken a short position.  (Id. ¶ 15)

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Filing system.

[2]  Unless otherwise noted, the following facts are drawn from the Complaint and are presumed
true for purposes of resolving Defendants' motions to dismiss.  See Kassner v. 2nd Ave.
Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

Defendant John Fichthorn, a New York resident, is the co-founder and manager of Defendant BR Dialectic Capital Management, LLC, a Delaware limited liability company with its principal place of business in Norwalk, Connecticut. (Id. ¶¶ 17-18) BR Dialectic is an investment advisor that allegedly "add[s] value through stock selection in the short portfolio." (Id. ¶ 18) The Complaint alleges that "[n]one of Dialectic's members are citizens of the State of Georgia or the State of Florida." (Id.) In an August 9, 2018 letter, BR Dialectic states that its sole member is B. Riley Capital Management, LLC, a limited liability company that is wholly owned by B. Riley Financial, Inc., a Delaware corporation with its principal place of business in Woodland Hills, California. (BR Dialectic Ltr. (Dkt. No. 103))

The Complaint asserts that the identities of Defendants Does 1 through 10 are unknown, but that they are responsible for the harm allegedly suffered by MiMedx. (Id. ¶ 19)

## II.     THE ALLEGED SCHEME TO DEFAME MIMEDX

The Complaint claims that Defendants engaged in a "short and distort" market manipulation conspiracy against MiMedx. (Id. ¶ 1) Defendants are "noted short sellers" and "have specifically admitted holding a short or bearish interest in MiMedx's stock." (Id.) Plaintiffs claim that "Defendants have maliciously disseminated materially false, misleading and defamatory statements about MiMedx and its employees to shareholders and the investing public, intending to fraudulently manipulate the market for MiMedx's stock and to allow Defendants to reap enormous profits from the resulting price decline." (Id.)

### A.     Fichthorn's September 15, 2017 Call with a MiMedx Shareholder

Plaintiffs claim that on September 15, 2017, Defendant Fichthorn spoke with an (unnamed) major MiMedx shareholder. (Id. ¶ 24) Plaintiffs contend that Fichthorn's statements

3

to the shareholder were "most[ly] . . . drawn from . . . former employees' false and unsubstantiated allegations." (Id. ¶ 25)

In December 2016, MiMedx sued certain former employees to enforce non-compete agreements. (Id. ¶ 5) The employees "counter-sued," "alleging that MiMedx fired them in retaliation for complaints about the company's purported business practices, including alleged 'channel-stuffing'" – "a practice of inflating sales and revenue figures by distributing to retailers more products than a company is able to sell to the public" (Id.) According to the Complaint, these allegations

> were invented simply to intimidate the Company into eliminating their non-compete agreements and paying a large settlement. As MiMedx disclosed in several press releases, a robust internal investigation showed that the former employees' allegations were unsupported by any credible evidence. Also, through the discovery process in those lawsuits, MiMedx obtained admissions from some of the litigants indicating that they did not have evidence to support their claims, and one litigant even withdrew his claims.

(Id. ¶ 6)

According to MiMedx, it does not engage in "channel-stuffing." Instead, it sells some its products on a consignment basis:

> Consignment sales are when a manufacturer or seller releases product to be stored by a buyer until the buyer has need for the product, at which point the buyer will actually purchase the product. . . . MiMedx has historically allowed hospitals and other entities to store product on a consignment basis, which is entirely proper and stands in stark contrast to channel stuffing because the seller does not receive a purchase order or recognize revenue until the actual purchase is made by the buyer.

(Id. ¶ 29)

On the September 15, 2017 call with the MiMedx shareholder, however, Fichthorn accused the company of fraudulent "channel stuffing." (Id. ¶¶ 24, 25) Fichthorn also compared MiMedx to Arthrocare, whose executives were convicted of fraudulent "channel

stuffing." (Id. ¶ 26) Fichthorn accused MiMedx of shipping product to the Department of Veterans Affairs and to doctors without purchase orders. (Id. ¶ 30) The Complaint alleges that "Fichthorn was fully aware of and understood MiMedx's consignment sale model because the model was explained to him in at least one of his multiple conversations with MiMedx's executives – including, specifically, [a] conversation that took place on August 11, 2017." (Id. ¶ 29)

In the September 15, 2017 call, Fichthorn made a number of other false or misleading statements "apparently in support of a channel-stuffing or a general fraud theory." (Id. ¶ 31) Fichthorn stated that

- He had talked to Texas and Florida distributors "who stuff product for MiMedx."

- Mark Brooks owns 25 different distribution companies in Texas that all distribute MiMedx product. Plaintiffs assert that Brooks owned only one company that purchased product from MiMedx, and that that arrangement ended in 2015.

- Bill McLaughlin, a "paid consultant to MiMedx," had "6 different business cards." Plaintiffs assert that McLaughlin is not a paid consultant for MiMedx.

- Fuse Medical is a "public distributor" of MiMedx, pays doctors in Fuse stock, and has a headquarters address that is a FedEx office. Plaintiffs assert that MiMedx never had a business relationship with Fuse.

- Forty doctors hold MiMedx shares. Plaintiffs assert that MiMedx has not granted shares to forty doctors.

- A former MiMedx employee has a list of 120 former MiMedx employees with knowledge of "channel stuffing."

(Id. ¶ 31)

In the call with the MiMedx shareholder, Fichthorn also implied that MiMedx's investigation into "channel stuffing" was "biased and inadequate," because the founder of the "local Atlanta law firm" that conducted the investigation was once on the board of the company where MiMedx's chief executive officer formerly worked. (Id. ¶ 32)

5

The Complaint alleges that, as a result of these statements, "the MiMedx shareholder sold approximately one million (1,000,000) shares of MiMedx stock on the open market. A sale of one million shares constitutes close to <u>half</u> of the stock's average daily trading volume over the past 50 days." (<u>Id.</u> ¶ 34)

**B.  Sparrow's September 20, 2017 Article**

Plaintiffs allege that Defendant Sparrow, using the pseudonym "Aurelius Value" (<u>id.</u> ¶ 36), published an article on September 20, 2017 accusing MiMedx of "channel stuffing." The Complaint alleges that Aurelius Value supported this accusation with "blatantly false and/or misleading statements." (<u>Id.</u> ¶¶ 35, 36, 38, 39) For example, Aurelius Value "impl[ied] that it [had] identified specific locations in which excess MiMedx inventory was being stored." (<u>Id.</u> ¶ 39) Aurelius Value identified Arthomed as a MiMedx distributor, and included a Google Street View of Arthomed's office, which showed a number of small offices and homes. (<u>Id.</u> ¶ 40) According to Plaintiffs, "[t]he clear implication was that MiMedx is using small homes and offices . . . as outlets for channel-stuffing activity." (<u>Id.</u> ¶ 40) The article also "purported to identify" undisclosed related-party transactions between MiMedx and its distributors (<u>id.</u> ¶ 43), and "implied that MiMedx has made misrepresentations to investors." (<u>Id.</u> ¶ 44)

**III.  PROCEDURAL HISTORY**

The Complaint was filed on October 4, 2017. (Dkt. No. 1) MiMedx brings claims for libel as to Sparrow and the Doe Defendants; slander as against BR Dialectic, Fichthorn, and the Doe Defendants; and claims of defamation, false light, and tortious interference with business relations against all Defendants. (<u>Id.</u> ¶¶ 83-87, 93-97, 98-102, 108-12, 113-19) McCormack brings claims of libel and defamation against the Doe Defendants. (<u>Id.</u> ¶¶ 88-92, 103-107)

Defendants Sparrow, Fichthorn, and BR Dialectic moved to dismiss under Fed. R. Civ. P. 12(b)(6). (Sparrow. Mtn. (Dkt. No. 33); Fichthorn & BR Dialectic Mtn. (Dkt. No. 38)) This Court referred these motions to Magistrate Judge Parker for an R&R. (Dkt. No. 42) On January 12, 2018, Judge Parker issued an R & R recommending that Defendants' motions to dismiss be granted. (Dkt. No. 83) Plaintiffs filed timely objections on January 30, 2018, and Defendants replied on February 13, 2018. (Dkt. Nos. 84, 86, 88)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Review of a Magistrate Judge's Report and Recommendation

This Court "may accept, reject, or modify in whole or in part" findings or recommendations issued by a magistrate judge. 28 U.S.C. § 636(b)(1). A district court must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." Id. "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 7 Civ. 6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." (citation and internal quotation marks omitted)).

#### B. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pleaded "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

II.    **JUDGE PARKER'S REPORT AND**
       **RECOMMENDATION AND PLAINTIFFS' OBJECTIONS**

Judge Parker recommends that Sparrow's motion to dismiss be granted, because MiMedx has not pled facts demonstrating that "Aurelius Value" is Sparrow. (R & R (Dkt. No. 83) at 8-10) Judge Parker further recommends that the defamation and slander claims against Fichthorn and BR Dialectic be dismissed, because (1) Fichthorn's alleged statements are protected opinion (id. at 12-15); and (2) MiMedx has not pled facts demonstrating actual malice. (Id. at 15-16) Judge Parker also recommends that MiMedx's false light claim against Fichthorn and BR Dialectic be dismissed, because (1) Fichthorn's comments concern a public company and a matter of public interest (id. at 17-18); (2) the Complaint does not plead facts making out the publicity element of the tort (id. at 18); and (3) Fichthorn's statements are protected opinion. (Id. at 18-19) Finally, the Report recommends that MiMedx's tortious interference with business relations claim against Fichthorn and BR Dialectic be dismissed because MiMedx has not pled facts demonstrating (1) interference with a specific business relationship; or (2) that Fichthorn was motivated solely by malice or inflicted harm on MiMidex by unlawful means. (Id. at 19-21)

In its objections, MiMedx contends that:

1.    the Court is required to accept as true Plaintiff's claim that Sparrow operates as Aurelius Value;

2.    Fichthorn's statements are not expressions of opinion, and were made with actual malice;

3.    Fichthorn's statements were made in conspiracy with other Defendants; and

4.    Plaintiffs have pled the existence of a business relationship.

(Pltf. Obj. (Dkt. No. 84) at 6, 15, 20, 27-28) Although certain of MiMedx's arguments as to actual malice overlap with arguments it made before Judge Parker (compare Pltf. Opp. (Dkt. No. 46) at 25-26, with Pltf. Obj. (Dkt. No. 84) at 24-25 (both arguing that the "actual malice"

9

requirement primarily exists "to protect journalists and other members of the media from liability

should they innocently publish information about a public figure which turns out to be untrue,"

and arguing – in near verbatim fashion – that Defendants are market participants who are

"seeking to personally profit by knowingly or recklessly maligning MiMedx's reputation"), the

Court reviews MiMedx's objections de novo, as they are neither "conclusory or general" nor a

mere repetition of the arguments it made before Judge Parker.

## DISCUSSION

### I.  SPARROW'S MOTION TO DISMISS

In recommending that Sparrow's motion to dismiss be granted, Judge Parker

found that the Complaint does not plead facts demonstrating that Defendant Sparrow operates as

"Aurelius Value." (R & R (Dkt. No. 83) at 8-10)  Judge Parker noted that "[i]n cases where a

plaintiff claims that the defendant uses an alias, courts require factual support for the asserted

connection between the alias and the defendant."  (Id. at 8 (citing Thompson v. KeyBank USA

N.A., 9 Civ. 4054 (DRH), 2010 WL 4961674 (E.D.N.Y. Dec. 1, 2010)))

MiMedx argues, however, that Judge Parker erroneously construed the claim that

Sparrow operates as Aurelius Value as a legal conclusion in need of factual support, rather than a

factual allegation that accepted as true on a motion to dismiss.  (Pltf. Obj. (Dkt. No. 84) at 17-18)

Plaintiff also contends that Judge Parker's misinterpreted Thompson, because "[t]he [Thompson]

Court expressly recognized that whether the defendant 'was pretending to be someone else or

using a pseudonym or alias' would be a 'factual allegation[].'"  (Pltf. Obj. (Dkt. No. 84) at 18

(quoting Thompson, 2010 WL 4961674, at *8))

In Thompson, plaintiff alleged that defendant KeyBank was "a debt collector

under the false name exception [of the Fair Debt Collection Practices Act "FDCPA"]," because it

was "using a name other than its own, i.e. Allied [International Credit Corp.] to collect debts." Thompson, 2010 WL 4961674, at *7. The complaint in that case, however, stated only that KeyBank "employed the service of . . . Allied . . . for the purposes of attempting to collect such payments from plaintiff." Id. at *8 (internal quotation omitted). In finding this allegation insufficient to support application of the false name exception under the FDCPA, the district court noted that "[c]onspicuously absent from the complaint are any factual allegations that KeyBank was pretending to be someone else or using a pseudonym or alias, i.e. Allied." Given the absence of factual allegations supporting the claim that "KeyBank allowed Allied to use the name KeyBank in its solicitations and to state it was calling on KeyBank's behalf," the court granted Key Bank's motion to dismiss. Id.

The Court concludes that Judge Parker properly cited Thompson for the proposition that a claimed use of an alias must be supported by factual allegations supporting that assertion.

In any event, Plaintiff's allegation that Sparrow used the alias "Aurelius Value" is made on information and belief. (Cmplt. (Dkt. No. 1) ¶¶ 15, 36) Claims premised on "information and belief" allegations can survive a motion to dismiss only "where the facts are peculiarly within the possession and control of the defendant," or "where the belief is based on factual information that makes the inference of culpability plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010).

Here, Judge Parker found that MiMedx's claim against Sparrow satisfied neither prong of this test: Plaintiffs "offer no factual support whatsoever for their belief that Sparrow is Aurelius Value . . . [n]or have they offered any factual basis for their belief that Sparrow knows

11

the identity of persons responsible for publishing Aurelius Value." (R & R (Dkt. No. 83) at 9)
This Court sees no error in Judge Parker's analysis.

First, the Complaint pleads no facts demonstrating that Sparrow is Aurelius
Value.[3] As to whether the facts are peculiarly within Sparrow's possession and control, Sparrow
argues that it has no knowledge of Aurelius's identity, "because Sparrow is not Aurelius[] [and
is] not affiliated with Aurelius." (Sparrow Opp. (Dkt. No. 88) at 13) MiMedx contends that "the
facts concerning Aurelius's identity are necessarily 'within the possession and control of the
defendant,' given Aurelius' efforts to hide from suit behind a wall of anonymity." (Pltf. Obj.
(Dkt. No. 84) at 19 (quoting Arista Records, 604 F.3d at 120))

Where courts have accepted this argument, the complaint pled facts that made
clear why the knowledge would be in the defendant's peculiar control. Indeed, the cases cited by
Plaintiff (Pltf. Obj. (Dkt. No. 84) at 19) provide good examples. In Energy Factors Inc. v. Nuevo
Energy Co., 91 Civ. 4273 (RLC), 1991 WL 259425 (S.D.N.Y. Nov. 22, 1991), plaintiff owned
stock in Defendant Nuevo. Id. at *1. A Nuevo employee contacted Wrobel – an officer of
plaintiff's parent company – about whether plaintiff would be interested in selling its Nuevo
stock. Wrobel said yes. Id. Months later, Walker – a Nuevo director – called Wrobel and asked
if plaintiff was still interested in selling its Nuevo stock, and Wrobel said yes. Neal – the
managing director of Southcoast – then contacted Wrobel. Neal had received Wrobel's name
through Myers – a financial analyst for Southcoast – who in turn had obtained Wrobel's name
from a Nuevo officer or director. Neal offered to buy plaintiff's Nuevo stock at a premium to its
current price on the New York Stock Exchange, and Wrobel agreed to sell the Nuevo shares.

---

[3] MiMedx does not contend otherwise. (Pltf. Obj. (Dkt. No. 84) at 19 (arguing only that
information and belief allegations are proper because the facts are solely within Sparrow's
possession and control))

The same day plaintiff sold its Nuevo stock, Neal – who had not previously owned Nuevo stock – purchased shares of Nuevo stock, and Walker also purchased shares of Nuevo stock for his own account. Shortly after plaintiff's sale and these purchases, Nuevo issued a positive press release, and its stock price jumped. Id. at *2.

Plaintiff alleged that Nuevo, Southcoast, Myers, and Neal "had material, nonpublic information regarding Nuevo, and that they traded on this information in violation of federal securities laws and of state law fiduciary obligations." Id. The district court noted that "[t]he amended complaint pleads the core elements of its insider trading allegations, namely the identity of the alleged tipper, tippee, and the contents of the alleged tip, solely 'on information and belief.'" Id. at *4. The district court, however, held that the heightened standard under Rule 9(b) was relaxed in this case, as it concerned matters "'particularly within the adverse parties' knowledge.'" Id. (quoting Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972)). The court further found that

> the details of who the alleged tipper was, when and to whom he tipped the inside information, and what exactly that inside information was, are all within the control of the defendants. At this stage of the proceeding, before any discovery has been allowed, to require the plaintiff to produce more concrete evidence of these details would put a heavy burden on plaintiff and would practically preclude the possibility of pleading an adequate complaint in cases, such as insider trading, that are profoundly secretive in nature.

Id.

In contrast to the instant case, in Energy Factors plaintiff pleaded sufficient facts to demonstrate why the missing information would have been within the peculiar knowledge of the defendants. Moreover, plaintiff pled many details concerning the alleged insider trading scheme – a type of criminal activity that is secret by its nature. There are no such facts and

13

circumstances pled here. MiMedx has not pled facts demonstrating why information concerning Aurelius Value are peculiarly within Sparrow's knowledge.

Similarly, in Shapiro v. Falk, 13 Civ. 3086 (WJM) (KMT), 2014 WL 4651952, at *3-11 (D. Colo. Sept. 18, 2014), report and recommendation adopted, id. at *1-3, plaintiff was an inmate at Sterling Correctional Facility in Colorado. Id. at *3. Plaintiff was called to the receiving unit to place his property in storage before being transported to court, and after having his photograph taken, was placed in a holding cell with approximately ten other inmates. Id. A prison official whom plaintiff believed was named Rynek then entered the holding cell and conducted a strip search of all inmates. Id. Plaintiff sued Rynek and his supervisors under Section 1983, alleging violations of his Fourth Amendment rights. Id. at *4. The court held that Plaintiff was allowed to plead the identity of Rynek on information and belief, because (1) "Plaintiff and another inmate who was present at the strip search have asserted a good-faith belief that Defendant Rynek was the individual who conducted the group strip search," id. at *6; and (2) the other defendants in the case "[were] in the best position to either confirm or deny that Defendant Rynek was the individual who performed the strip search." Id.

In Shapiro, as in Energy Factors, the complaint pled facts that made it clear why the other officers were likely to know the identity of the officer who conducted the strip search – they were alleged to have supervised the officer that performed the search. Here, MiMedx has pled no facts explaining why Aurelius Value's alleged relationship to Sparrow is known only to Sparrow.

The Court agrees with Judge Parker that Sparrow's motion to dismiss must be granted, because the Complaint does not plead facts demonstrating that Aurelius Value is Sparrow's alias.

## II.    FICHTHORN AND BR DIALECTIC'S MOTION TO DISMISS

### A.    Defamation and Slander Claims

#### 1.    Legal Standards

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." Idema v. Wager, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). "To state a claim for defamation under New York law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'"[4] Gargiulo v. Forster & Garbus Esqs., 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citing Dillon v. City of New York, 261 A.D.2d 34, 38 (1st Dep't 1999)).

"Under New York law, to state a prima facie case of slander, a plaintiff must satisfy the following seven elements: '(1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) "of and concerning" the plaintiff; (5) made with the applicable level of fault on the part of the speaker; (6) either causing special harm or constituting slander per se; and (7) not protected by privilege.'" Dooner v. Keefe, Bruyette & Woods, Inc., 00 Civ.

---

[4] Before Judge Parker, all parties analyzed the defamation claims under New York law.  (See Sparrow Br. (Dkt. No. 34) at 13 n.1; Fichthorn & BR Dialectic Br. (Dkt. No. 39) at 9-17; Pltf. Opp. (Dkt. No. 46) at 19 & n.4)  Judge Parker applied New York law to these claims, noting that "[t]he parties cite to New York law for the defamation and tortious interference claims and do not contest application of New York law." (R & R (Dkt. No. 83) at 17 n.3)  No party has objected to this ruling, and it is not clearly erroneous.  See Hanly v. Powell Goldstein, LLP, 5 Civ. 5089 (KMW), 2007 WL 747806, at *4 (S.D.N.Y. Mar. 9, 2007) ("Georgia law governing defamation . . . is substantively the same as the law of New York."), aff'd sub nom. Hanly v. Powell Goldstein, L.L.P., 290 F. App'x 435 (2d Cir. 2008).  In addition, "in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied." Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984).

572 (JGK), 2003 WL 135706, at *5 (S.D.N.Y. Jan. 17, 2003) (quoting Albert v. Loksen, 239 F.3d 256, 265-66 (2d Cir. 2001)).

Where plaintiff is a public figure – as is the case here[5] – plaintiff must demonstrate that the defendant acted with "actual malice" to prevail in a defamation action, whether the defamation is premised on libel or slander. See Nolan v. State, 158 A.D.3d 186, 191 (1st Dep't 2018) ("'Actual malice' is the standard used to assess potential liability in cases involving alleged defamation against public figures or against private figures whose speech was of public concern."); see also Kipper v. NYP Holdings Co., 12 N.Y.3d 348, 353 (2009) ("[T]he U.S. Constitution's First Amendment bars a public figure from recovering damages in a libel action unless clear and convincing evidence proves that a false and defamatory statement was published with 'actual malice' . . . ." (internal quotation omitted)); 600 W. 115th St. Corp. v. Von Gutfeld, 80 N.Y.2d 130, 137-38 (1992) (in connection with slander claim, Court of Appeals stated that "the Supreme Court has fashioned broad protection under the Federal Constitution for civic participants, most notably by requiring plaintiffs who are . . . public figures . . . to show actual malice on the part of the defendant" (citations omitted))

"Actual malice requires proof that the publisher had a subjective awareness of either falsity or probable falsity of the defamatory statement, or acted with reckless disregard of its truth or falsity." Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 182 (2d Cir. 2000)

---

[5] Judge Parker found that MiMedx is a public figure. (R & R (Dkt. No. 83) at 11) MiMedx does not contest this finding, and this Court sees no clear error in it. See Reliance Ins. Co. v. Barron's, 442 F. Supp. 1341, 1348 (S.D.N.Y. 1977) (concluding that a property, casualty, and life insurance company is a public figure: "It is a large corporation with more than a billion dollars in assets. Nearly all of its common stock is owned . . . by . . . a publicly held company whose shares are traded on the New York Stock Exchange. There has been great public interest in [plaintiff] and its affiliated companies over the past several years, particularly with respect to the circumstances surrounding its acquisition.").

(citations omitted). In <u>St. Amant v. Thompson</u>, 390 U.S. 727 (1968), the Supreme Court gave examples of facts that would support a finding of actual malice: where a story is fabricated by defendant or is based wholly on "unverified," "anonymous" sources; when the "allegations are so inherently improbable that only a reckless man would have put them in circulation"; and "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." <u>St. Amant</u>, 390 U.S. at 732; <u>see also</u> <u>Biro v. Conde Nast</u>, 807 F.3d 541, 545 (2d Cir. 2015) (actual malice may be inferred where a defendant provides no source for the allegedly defamatory statements; a purported source denies providing the information; the statement is based on an unverified, anonymous source; the statement is published despite obvious reasons to doubt the veracity of the informant or accuracy of his reports; or the statement is inherently improbable).

To defeat a motion to dismiss, "[a] public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice." <u>Biro</u>, 807 F.3d at 546 (quoting <u>Twombly</u>, 550 U.S. at 556); <u>id.</u> at 544 ("[M]alice must be alleged plausibly in accordance with Rule 8.")

## 2. <u>Analysis</u>

Judge Parker concludes that the Complaint does not plead sufficient facts to provide "plausible grounds" to infer actual malice. In particular, Judge Parker faults MiMedx for pleading that "Fichthorn should have known [that MiMedx] was blameless because its leaders had told him so." (R & R (Dkt. No. 83) at 16) As Judge Parker points out,

> allegations that a speaker knew of a plaintiff's denials of wrongdoing are insufficient to establish actual malice because any other rule would allow public figures to stifle criticism merely by denying accusations. . . . Fichthorn was free to evaluate information he received from various sources when relaying his views and information about MiMedx to the shareholder, and his knowledge of MiMedx's denial of misconduct therefore does not establish malice.

(Id. (citing St. Amant, 390 U.S. at 731 ("There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.")))

Plaintiff objects to Judge Parker's findings concerning actual malice (Pltf. Obj. (Dkt. No. 84) at 24-27), and contends that two sets of statements demonstrate that Fichthorn acted with actual malice.

First, MiMedx cites Fichthorn's statement to the MiMedx shareholder that he should "'think of the Arthrocare CEO who went to jail' for channel stuffing," and his reference to "a series of alleged instances where products were shipped [by MiMedx] without purchase orders." (Id. at 25 (citing Cmplt. (Dkt. No. 1) ¶¶ 25-26, 29-30; see also id. ¶ 33 (shareholder is male)) According to Plaintiff, Fichthorn made these statements "despite knowing he was merely describing legal consignment sales, which MiMedx had explained to him only days prior." (Id. (emphasis in original))

Second, Plaintiffs argue that

> Fichthorn . . . told MiMedx's shareholder that the company was engaged in what essentially amounted to illegal physician kickbacks by distributing its products through a "physician-owned distributor" known as Fuse Medical, which he suggested was a sham because Fuse's headquarters address corresponded to a FedEx Office location.

(Id. (citing Cmplt. (Dkt. No. 1) ¶ 31) Plaintiff argues that "a simple Google search shows that while there is a FedEx Office at the same street address as Fuse's headquarters, it has an obviously different suite number within the same complex." (Id.) Plaintiff argues that "[u]nder these circumstances and contrary to the Report's mistaken conclusion, MiMedx has alleged that Fichthorn engaged in 'the purposeful avoidance of the truth,' which constitutes actual malice." (Id. at 25-26 (quoting Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 692 (1989)))

As to the statements concerning "channel stuffing," Judge Parker noted that "allegations that a speaker knew of a plaintiff's denial of wrongdoing are insufficient to establish actual malice." (R & R (Dkt. No. 83) at 16 (citing Edwards v. Nat'l Audobon Soc'y, Inc., 556 F.2d 113, 121 (2d Cir. 1977) ("[S]uch denials are so commonplace . . . that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.")); see also Harte-Hanks Commc'ns, 491 U.S. at 691 n.37 ("[T]he press need not accept 'denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'" (quoting Edwards, 556 F.2d at 121)); Contemporary Mission, Inc. v. New York Times Co., 665 F. Supp. 248, 270 (S.D.N.Y. 1987) ("Publication in the face of a denial by plaintiffs of a statement's truth does not demonstrate actual malice."), aff'd, 842 F.2d 612 (2d Cir. 1988))

MiMedx attempts to distinguish these cases, arguing that "[a]t no time did Fichthorn present MiMedx with facts allegedly demonstrating fraudulent conduct [by] MiMedx, nor did MiMedx offer a simple denial of such facts." (Pltf. Obj. (Dkt. No. 84) at 26) Rather, "Fichthorn learned of facts that did not demonstrate fraudulent conduct – i.e., that certain doctors had reported receiving MiMedx product without a purchase order – and received an explanation from MiMedx confirming that this is indeed one way that the company legitimately operates, because it does not recognize revenue until the purchase is completed." (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 29-30) (emphasis in original)) Plaintiffs allege that Fichthorn therefore "had no basis to suggest that MiMedx had engaged in fraudulent or illegal conduct, but did so anyway." (Id. at 27)

As an initial matter, while the Complaint states that "most" of Fichthorn's statements on the call were drawn from former employees' allegations, it does not specify which

allegations are premised on the statements of former employees. (Cmplt. (Dkt. No. 1) ¶ 25) Without clarity on whether Fichthorn's statements were a repetition of these previous allegations, were drawn from other sources, or were made up out of whole cloth, Plaintiffs have not plausibly pled actual malice. See Biro, 807 F.3d at 545 ("And of course whether actual malice can plausibly be inferred will depend on the facts and circumstances of each case. For example, a plaintiff may allege that 'a story [was] fabricated by the defendant' if the defendant provides no source for the allegedly defamatory statements or if the purported source denies giving the information. Or the plaintiff may point to the fact that the allegedly defamatory statements were 'based wholly on an unverified anonymous telephone call' or were published despite 'obvious [specified] reasons to doubt the veracity of the informant or the accuracy of his reports' or despite the 'inherently improbable' nature of the statements themselves." (quoting St. Amant, 390 U.S. at 732)). Moreover, to the extent Fichthorn's comments regarding "channel stuffing" were based on public allegations against the company (see Cmplt. (Dkt. No. 1) ¶¶ 5, 25), Plaintiff's argument that Fichthorn had "no basis to suggest that MiMedx had engaged in fraudulent or illegal conduct" is incorrect. (Pltf. Obj. (Dkt. No. 84) at 27)

As to Plaintiff's claim that MiMedx's consignment model was explained to Fichthorn in an August 11, 2017 telephone call (Pltf. Opp. (Dkt. No. 84) at 9; Cmplt. (Dkt. No. 1) ¶ 29), the Complaint does not plead what Fichthorn was told in this call. (Id.) Although Plaintiffs state in their objections that "Fichthorn learned of facts that did not demonstrate fraudulent conduct" – and then go on to list what those facts were (see Pltf. Obj. (Dkt. No. 84) at 26) (emphasis in original) – the facts allegedly shared with Fichthorn in the August 11, 2017 call are not set forth in the Complaint, and thus cannot be considered in connection with this motion

to dismiss. As such, MiMedx's attempt to distinguish the cases upon which Judge Parker relies fails.

Finally, to the extent Fichthorn was repeating the former employees' allegations, the Complaint does not plausibly allege that this repetition demonstrates reckless disregard for the truth. While the Complaint alleges that "the former employees' allegations were invented simply to intimidate the Company," and were disproven by a "robust internal investigation" whose results were "disclosed in several press releases" (Cmplt. (Dkt. No. 1) ¶ 6), it also alleges that Fichthorn's comments were "most[ly] . . . drawn" from named sources – the former MiMedx employees. (Id. ¶ 25) Moreover, Fichthorn's "channel-stuffing" allegations are not "inherently improbable." MiMedx does not allege that there was any reason to doubt the veracity of the employees that was so "obvious" as to suggest recklessness. St. Amant, 390 U.S. at 732.

Lemelson v. Bloomberg LP, 253 F. Supp. 3d 333 (D. Mass. 2017), aff'd, No. 17-1620, 2018 WL 4140269 (1st Cir. Aug. 30, 2018), is instructive. In Lemelson, Bloomberg News published an article about plaintiff, "a hedge fund manager and ordained Eastern Orthodox priest." Id. at 336. Before the article was published, its author – Matthew Robinson – contacted Lemelson. During the call, Lemelson told Robinson that "he was aware that the SEC was investigating trading in a pharmaceutical company named Ligand, but that 'neither he nor his firm was the target of any investigation.'" Id. at 337 (quoting Cmplt. ¶ 32). Robinson told Lemelson that he was "'going to write that you are being investigated anyway.'" Id. (quoting Cmplt. ¶ 33). The published article states that Lemelson was "being investigated by U.S. regulators for possible stock manipulation, prompting scrutiny of trading skills that the cleric has described as a 'gift from God' . . . . The Securities and Exchange Commission is examining whether [Lemelson] made false statements about companies he was shorting, said the people

who asked not to be named because the probe isn't public." Id. (quoting Cmplt. ¶¶ 42, 43, Ex. A).

In the subsequent lawsuit, Lemelson claimed that he was not the target of an SEC investigation, and that defendants knew or should have known that this allegation in the article was false. Id. The district court held that Lemelson had not sufficiently alleged that defendants acted with actual malice:

> Lemelson's personal assertion to Robinson that he was not the target of an SEC investigation is not sufficient to support the contention that Defendants published the allegations knowing them to be false or with reckless disregard for their falsity, because "such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." Harte-Hanks Commc'ns, Inc. v. Connaughton, [491 U.S. 657, 692 n.37] (1989) (quoting Edwards v. National Audubon Society, Inc., 556 F.2d 113, 121 (2d Cir. 1977) ("Surely liability under the 'clear and convincing proof' standard of New York Times v. Sullivan cannot be predicated on mere denials, however vehement . . . .")). If a subject's simple denial is sufficient to demonstrate that subsequent publication shows a reckless disregard for the truth, then no disputed fact could ever safely be published. Alleging publication in the face of Fr. Lemelson's denial is simply not enough to meet the high bar required to plausibly plead "actual malice."

Id. at 340-41.

The First Circuit affirmed on substantially the same grounds, relying on four "points of context." First, there was no plausible motive "for Bloomberg to have fabricated from whole cloth any story critical of Lemelson." Second, "the complaint and unchallenged portions of the article itself point to undisputed facts that preclude [the court] from inferring that the notion of an SEC investigation of Lemelson would have seemed so implausible as to cast doubt on Bloomberg's belief that it was true." Third, "the complaint concedes that, before publishing its story, Bloomberg reached out repeatedly to secure an interview with Lemelson and to otherwise solicit his comment, and then published his denial of the claim that he was under investigation. That conduct tends to undercut any inference of actual malice." Fourth, although

the complaint alleged on information and belief that Bloomberg did not contact the SEC, the article stated that an SEC spokesman declined to comment. Lemelson, 2018 WL 4140269, at *3-4. Although Lemelson argued that Bloomberg should have included two statements he made to Robinson in their telephone call, the First Circuit held that those statements did not demonstrate the probable falsity of the allegedly defamatory statements, as is required to "give rise to an inference of actual malice. Id. at *4 (citing Connaughton, 491 U.S. at 692).

Similarly here, even if MiMedx explained to Fichthorn that its sales practices were legitimate, that explanation alone is not sufficient to plead actual malice. In any event, as discussed above, the Complaint does not disclose what Fichthorn was told in the August 11, 2017 call, and Plaintiff's conclusory description is plainly inadequate. As such, this Court agrees with Judge Parker's conclusions that "Fichthorn was free to evaluate information he received from various sources" and "his knowledge of MiMedx's denial of misconduct therefore does not establish malice." (R & R (Dkt. No. 83) at 16)

As to MiMedx's argument regarding the address of Fuse Medical, this statement cannot support a defamation claim, as it is not "of and concerning" Plaintiff. "The 'of and concerning' element in defamation actions requires that the allegedly defamatory comment refer to the plaintiff." Brady v. Ottaway Newspapers, Inc., 84 A.D.2d 226, 228 (2d Dep't 1981) (citing Julian v. Am. Bus. Consultants, Inc., 2 N.Y.2d 1 (1956)). Even assuming arguendo that the purpose of this statement was to undermine the legitimacy of one of MiMedx's distributors and thus MiMedx itself, this alleged effect alone does not satisfy this requirement: Fuse Medical's address is not "about" MiMedx. See Kirch v. Liberty Media Corp., 449 F.3d 388, 398 (2d Cir. 2006) (stating that "[a] false disparaging statement about IBM, for example, would not, we think, ordinarily be a defamatory statement 'of and concerning' all of IBM's suppliers,

employees and dealers, however much they may be injured as a result"; explaining that in cases where a statement was held to be "of and concerning" plaintiff "even though on its face it was aimed at another person or entity[,] . . . in each such case, the statement, though not naming the plaintiff, could have been understood by a reasonable reader as being, in substance, actually about him or her").[6]

Finally, to the extent MiMedx argues that Fichthorn "purposefully disregarded the truth about MiMedx" because he intended to "benefit himself financially" (Pltf. Obj. (Dkt. No. 84) at 25), this purported financial motive – standing alone – does not support a finding of actual malice. See Harte-Hanks Commc'ns, 491 U.S. at 667 ("Nor can the fact that the defendant published the defamatory material in order to increase its profits suffice to prove actual malice."); Palin v. New York Times Co., 264 F. Supp. 3d 527, 537 (S.D.N.Y. 2017) (finding that neither the defendant newspaper's known bias against plaintiff "nor the supposition that a sharp attack on a disfavored political figure will increase a publication's readership" is enough to prove actual malice), reconsideration denied, 2017 WL 5514371 (Oct. 23, 2017).

---

[6] In any event, MiMedx concedes that Fuse's office is within the same complex as a FedEx office, and that only the suite numbers of the Fuse headquarters and the FedEx office are different. (Pltf. Obj. (Dkt. No. 84) at 25) Given these circumstances, the Complaint does not plead facts plausibly demonstrating Fichthorn's "subjective awareness of either falsity or probable falsity of the defamatory statement, or . . . reckless disregard of its truth or falsity." Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 182 (2d Cir. 2000). To the extent that Plaintiff argues that Fichthorn should have investigated by "Googling" the address, "a failure to investigate is not by itself proof of reckless disregard, 'even if a prudent person would have investigated before publishing the statement, unless it evinces a deliberate intent to avoid the truth.'" Langenkamp v. N.Y. Univ., 10 Civ. 8883 (AKH), 2012 WL 12540277, at *3 (S.D.N.Y. Mar. 15, 2012) (quoting Sanderson v. Bellevue Maternity Hosp., 259 A.D.2d 888, 890 (3d Dep't 1999)).

In sum, this Court adopts Judge Parker's recommendation that the defamation and slander claims against Defendants Fichthorn and BR Dialectic be dismissed, because MiMedx has not pled facts demonstrating that Fichthorn acted with actual malice.[7]

**B.  False Light**

Judge Parker addresses MiMedx's false light invasion of privacy claim under both New York and Georgia law, as the parties dispute which state's law applies.  (R & R (Dkt. No. 83) at 17; see also Pltf. Br. (Dkt. No. 46) at 30-32; Fichthorn Reply (Dkt. No. 62) at 8 n.1)

The claim fails under New York law because New York does not recognize the tort of false light invasion of privacy.  Cruz v. Latin News Impacto Newspaper, 216 A.D.2d 50, 51 (1st Dep't 1995).

False light claims under Georgia law require a plaintiff to "establish the existence of false publicity that 'depicts the plaintiff as something or someone which [he or she] is not.'" Ass'n Servs., Inc. v. Smith, 549 S.E.2d 454, 459 (Ga. Ct. App. 2001) (quoting Zarach v. Atlanta Claims Ass'n, 500 S.E.2d 1, 6 (Ga. Ct. App. 1998) (internal citation and punctuation omitted)). "Next, the plaintiff must demonstrate that 'the false light in which [he or she] was placed would be highly offensive to a reasonable person.'" Id. (quoting Thomason v. Times-Journal, Inc., 379 S.E.2d 551, 554 (Ga. Ct. App. 1989) (internal citation and punctuation omitted)).

As an initial matter, although MiMedx contends that a false light claim based on a matter of public interest may proceed where there is proof of actual malice, it has not objected to Judge Parker's finding that MiMedx, as a public company, "has no privacy interest in the subject

---

[7] The Complaint contains no allegations against BR Dialectic other than those made against Fichthorn.  As such, dismissal of the claims against BR Dialectic is appropriate.  See Hughes v. Twenty-First Century Fox, Inc., 304 F. Supp. 3d 429, 453 (S.D.N.Y. 2018) ("Absent specific allegations that individuals at Fox acted with actual malice, Fox as a corporate defendant cannot face liability for [Plaintiff's] defamation claim.").

matter discussed," and may thus not bring a false light invasion of privacy claim under Georgia law. (R&R (Dkt. No. 83) at 17)  Because MiMedx has not objected to this finding, this Court's review is subject to a "clear error" standard.

Judge Parker cited two Georgia cases in support of her finding that a corporation cannot bring a false light claim because it lacks a privacy interest.  In <u>Jaillett v. Georgia Television Co.</u>, 520 S.E.2d 721 (Ga. Ct. App. 1999), plaintiff ran an air conditioning business, and sued a TV news station that made allegedly false and defamatory statements about his business during a television newscast.  <u>Id.</u> at 723-24.  The Georgia Court of Appeals addressed plaintiff's false light claim as follows:

> [Plaintiff] contends that, in addition to his defamation claim, he has an independent claim for invasion of privacy because of publicity casting his business in a false light. The tort of invasion of privacy . . . is based upon the defendant's violation of the plaintiff's right "to be let alone."
>
> . . .
>
> [A]ny publicity from [the news station's] broadcast related solely to the operation of [plaintiff's] business.  Accordingly, the broadcast did not violate [plaintiff's] right to be let alone, and the trial court did not err in granting summary judgment on this claim.

<u>Id.</u> at 726-27 (citations omitted).  Similarly, in <u>S & W Seafoods Co. v. Jacor Broad. of Atlanta</u>, 390 S.E.2d 228 (Ga. Ct. App. 1989), a radio talk-show host made a "series of critical and unflattering comments about" a restaurant and its manager <u>Id.</u> at 229.  They brought a claim for false light, and the Georgia Court of Appeals dismissed the claim, holding that "the plaintiffs waived their right to be 'let alone' in regard to the operation of their restaurant by inviting and advertising for public patronage." <u>Id.</u> at 232.

Based on these cases, the lack of any contrary Georgia authority, and the background common law rule that a corporation does not have a right of personal privacy, <u>see</u>

FCC v. AT & T Inc., 562 U.S. 397, 406 (2011) ("[T]reatises in print around the time that Congress drafted the exemptions [to the Freedom of Information Act] at hand reflect the understanding that the specific concept of 'personal privacy,' at least as a matter of common law, did not apply to corporations."); RESTATEMENT (SECOND) OF TORTS § 652I, cmt. c ("A corporation, partnership or unincorporated association has no personal right of privacy. It has therefore no cause of action for any of the four forms" of privacy invasion.), this Court adopts Judge Parker's finding that MiMedx – as a publicly traded company – does not have a right to be "let alone" in regards to the operation of its business, and therefore cannot bring a false light claim.

MiMedx complains, however, that Judge Parker failed to acknowledge that "the existence of 'actual malice' means that Plaintiffs' false light claim may proceed even if the subject matter of Fichthorn's communications was a matter of public interest." (Pltf. Obj. (Dkt. No. 84) at 28 (citing Brewer v. Rogers, 439 S.E.2d 77, 83; Sewell v. Trib Publications, Inc., 622 S.E.2d 919, 924 (Ga. Ct. App. 2005) (plaintiff can prevail on false light claim regarding "matters of public interest" if "defendants acted with actual malice"))) As discussed above, even if Fichthorn acted with actual malice, MiMedx as a public company does not have a privacy interest such that it can bring a false light claim. Moreover, and as also discussed above, MiMedx has not pled facts demonstrating that Fichthorn acted with actual malice. Accordingly, Plaintiff's false light claim will be dismissed.[8]

---

[8] Judge Parker also concluded that MiMedx has not pled facts that satisfy the publicity element of the false light tort, given that Fichthorn made his statements to only one person. (R & R (Dkt. No. 83) at 18 (citing Simpson v. Certegy Check Servs., Inc., 513 F. App'x 843, 845-46 (11th Cir. 2013) (dismissing false light claim where defendant told one business that it would not "warrant [Plaintiff's] checks," id. at 846); Ass'n Servs., Inc. v. Smith, 549 S.E.2d 454, 459 (Ga. Ct. App.

## C.   Tortious Interference with Business Relations

"A claim for tortious interference with business relations requires that a plaintiff show that (1) the plaintiff had business relations with a third party; (2) the defendant had interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means, and (4) the defendant's acts injured the relationship." Mi-Kyung Cho v. Young Bin Café, 42 F. Supp. 3d 495, 509 (S.D.N.Y. 2013) (internal quotation marks and citations omitted).  Judge Parker concluded that MiMedx had not pled facts demonstrating interference with a specific business relationship, stating that "there must be evidence of a more specific contract or business relationship apart from stock ownership to sustain a claim."  (R & R (Dkt. No. 83) at 20 (citing Deer Consumer Prods., Inc. v. Little Grp., No. 650823/2011 (CRE), 2012 WL 5983641, at *3 (N.Y. Sup. Ct., N.Y. Cty. Nov. 29, 2012)) Accordingly, Judge Parker found that the Complaint's allegation of interference with one

---

2001) (affirming grant of summary judgment to defendant on plaintiff's false light claim because plaintiff was not "placed in the public eye" by disclosure of contested videotape, as the general public did not view the tape)))  MiMedx argues that the R&R ignores the Complaint's allegations that "Fichthorn conspired with Aurelius and Viceroy to formulate the set of false contentions . . . that they eventually released to the public." (Pltf. Obj. (Dkt. No. 84) at 28)  This argument fails, however, because MiMedx has not sufficiently pled the existence of a conspiracy.

The Complaint alleges that Defendants engaged in a conspiracy because "their false allegations closely track one another and in some instances are almost identical." (Cmplt. (Dkt. No. 1) ¶ 78) The Complaint also lists "similarities" among the allegations made by Fichthorn, Aurelius Value, and former Defendant Viceroy. (Id. ¶¶ 79-80)  While the Complaint alleges parallel conduct, "[w]ithout more, parallel conduct does not suggest conspiracy." Twombly, 550 U.S. at 556-57. The fact that some of the statements Fichthorn made and some of the accusations made by others overlap does not make it more than "speculative" that these parties conspired to place MiMedx in a false light.  Accordingly, the Complaint does not plead facts making out a conspiracy, and Judge Parker correctly concluded that the publicity element of the false light claim is not satisfied by the Complaint's factual allegations.

MiMedx shareholder – who subsequently sold his MiMedx stock – was insufficient to state a claim for tortious interference with business relations. (Id.)

MiMedx argues, however, that the tortious interference claim in Deer Consumer failed because plaintiffs made only general allegations of interference with shareholders and did not identify any specific business relationship. (Pltf. Obj. (Dkt. No. 84) at 29)

In Deer Consumer Products, a publicly traded company alleged that defendants had published defamatory articles online "as part of an overall scheme to artificially drive down the price of plaintiff[']s common stock in order to profit on short sales." Deer Consumer, 2012 WL 5983641, at *1. The court dismissed plaintiff's tortious interference with business relations claim, finding that it had "failed to 'identify any specific . . . business relationship that [it] was prevented from entering into as a result of defendants' interference.'" Id. at *23 (quoting Baker v. Guardian Life Ins. Co. of Am., 12 A.D.3d 285 (1st Dep't 2005)). The court found insufficient plaintiff's "conclusory statement that defendant interfered with plaintiff[']s shareholders, investors, and financiers," noting that plaintiff "should be in possession of identities and parties and the relationships with which defendants interfered." Id. at *23. The case does not hold, however, that a tortious interference with business relations claim cannot be premised on a shareholder relationship.

Even assuming arguendo that stock ownership in a publicly traded company can be considered a "business relationship" sufficient to sustain a tortious interference claim – and setting aside the issue of whether the shareholder must be identified in order for such a claim to survive a motion to dismiss – Judge Parker also found that MiMedx had not sufficiently alleged that Fichthorn had acted with a wrongful purpose or used improper means. (R & R (Dkt. No. 83) at 20; see also 16 Case Duse, LLC v. Merkin, 791 F.3d 247, 262 (2d Cir. 2015) (upholding

summary judgment for defendant on tortious interference with business relations claim where
plaintiff had not demonstrated that defendant had "'acted for a wrongful purpose or used
dishonest, unfair, or improper means'" (quoting Catskill Dev., L.L.C. v. Park Place Entm't
Corp., 547 F.3d 115, 132 (2d Cir. 2008)); "[w]hen a defendant has acted with a permissible
purpose, such as 'normal economic self-interest,' wrongful means have not been shown"
(quoting Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190 (2004))); Monex Fin. Servs., Ltd. v.
Dynamic Currency Conversion, Inc., 62 A.D.3d 675, 676 (2d Dep't 2009) (dismissing tortious
interference with prospective business relations claim because "plaintiffs did not plead that . . .
[defendants were] motivated solely by malice or to inflict injury by unlawful means, beyond
mere self interest or other economic considerations"))

      The Complaint alleges that Defendants' intention was to "produc[e] large profits
for themselves and MiMedx's other short-sellers." (Cmplt. (Dkt. No. 1) ¶ 10)  Acting pursuant
to economic self-interest does not constitute a wrongful purpose, however.  Carvel, 3 N.Y.3d at
190 (Carvel franchisees sued Carvel for tortious interference with business relations based on
Carvel's plan to sell Carvel ice cream in supermarkets; claim rejected because "[i]t is undisputed
that Carvel's motive in interfering with the franchisees' relationships with their customers was
normal economic self-interest; Carvel wanted to reverse a period of business declines and make
itself more profitable.  It was not acting solely to hurt the franchisees. . . .").

      MiMedx argues, however, that it "has pleaded that Fichthorn acted via unlawful
means." (Pltf. Obj. (Dkt. No. 84) at 29)  As discussed above, however, MiMedx has not pled
facts demonstrating that Fichthorn committed defamation or false light, and therefore MiMedx
has not pled that he used unlawful means.

This Court adopts Judge Parker's recommendation that the claim for tortious interference with business relations be dismissed.

### III.   LEAVE TO AMEND

MiMedx has requested leave to amend in the event that this Court dismisses the Complaint in whole or in part. (Pltf. Opp. (Dkt. No. 46) at 35)  "[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 91 (2d Cir. 2003) (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).  "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002) (citations omitted).

Here, Defendants have not pointed to any compelling reason why leave to amend should be denied.  Moreover, it is not clear that any amendment would be futile.  Accordingly, leave is granted to file an Amended Complaint.

### CONCLUSION

The Court adopts the findings and conclusions in Judge Parker's Report and Recommendation as set forth above.  Defendants' motions to dismiss are granted.  Plaintiffs' motions for expedited discovery and for oral argument are denied as moot.  The Clerk of Court is directed to terminate the motions. (Dkt. Nos. 14, 33, 38, 85)

Any Amended Complaint will be filed by October 12, 2018.

Dated: New York, New York
         September 29, 2018                    SO ORDERED.

                                               _Paul G. Gardephe_
                                               Paul G. Gardephe
                                               United States District Judge